# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

UNITED STATES OF AMERICA                                                      PLAINTIFF

v.                     No. 4:12CR00263-01 JLH

RAMI HASAN a/k/a RAMI SAAB                                      DEFENDANT

## OPINION AND ORDER

Rami Hasan has been indicted in a five count indictment. Count 1 charges Hasan and two other defendants with conspiring to distribute more than 100 grams of pseudoephedrine knowing that it would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841 and 21 U.S.C. § 846. Count 2 charges Hasan with using a communication facility, a telephone, in facilitating a felony under 21 U.S.C. § 841 in violation of 21 U.S.C. § 843(b). Count 3 charges Hasan and one other person with possessing more than 40 grams of pseudoephedrine while having reasonable cause to believe that it would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(c) and 2. Count 4 charges Hasan with possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). Count 5 charges Hasan with possessing ammunition after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).

Hasan previously had two detention hearings before United States Magistrate Judge J. Thomas Ray. Judge Ray ordered that Hasan be detained pending trial after concluding that there was no condition or set of conditions that would reasonably assure Hasan's appearance. Hasan has filed a motion to set aside that order.

The Bail Reform Act of 1984 provides that if a person is ordered detained by a magistrate judge, that person may file with the district court a motion for revocation or amendment of the order.

21 U.S.C. § 3145(b). Review by the district court is *de novo*. *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985).

Here, the Court conducted a hearing after Hasan filed his motion, and, at the hearing, informed the parties that the Court would allow the parties to present the evidence anew, as though this were the first hearing; or, if the parties preferred, the Court would consider the transcript of the hearings before Judge Ray. The parties agreed that the Court should review the transcripts of the hearings before Judge Ray and consider any new evidence that the parties wished to present. The Court has now reviewed the transcripts of the hearings before Judge Ray and has considered the additional evidence offered by the parties,[1] as well as the additional arguments offered by the parties, at the hearing before this Court.

The Bail Reform Act provides that the Court must determine whether any condition or combination of conditions stated in the statute will reasonably assure the appearance of the defendant and the safety of any other person in the community. 18 U.S.C. § 3142(f). The Eighth Circuit has explained:

> Consistent with the intent expressed in the legislative history, the statutory scheme of 18 U.S.C. § 3142 continues to favor release over pretrial detention. Section 3142 provides four alternatives from which the judicial officer must choose: (1) release on personal recognizance or unsecured appearance bond, or (2) release subject to certain

---

[1] Judge Ray conducted hearings on September 17, 2012, and October 4, 2012. At the October 4 hearing, the government introduced as Government's Exhibit 1 transcripts of telephone calls made by Hasan while detained in the Craighead County Detention Center after his arrest on the instant charges. At the hearing on October 29, the government introduced Hasan's parole file as Government's Exhibit 1 and a list of Hasan's trips out of the country from September 19, 2009, until June 16, 2012, as Government's Exhibit 2. Hasan introduced a certificate of marriage registration as Defendant's Exhibit 1 and an ultrasound image as Exhibit 2. The Court has reviewed all of the exhibits, as well as the transcripts of both hearings before Judge Ray. The Court has also reviewed the pretrial services report prepared by pretrial services officer James Jordan Buescher on September 10, 2012.

2

> conditions, or (3) temporary detention to permit, among other things, revocation of conditional release, or (4) pretrial detention. The judicial officer most often will be deciding between the first and the second alternatives. The statutorily mandated progression from one choice to the next is critical: a judicial officer cannot determine that a detention hearing and the possible imposition of pretrial detention is appropriate merely by determining that release on personal recognizance will not "reasonable assure" the defendant's appearance at trial or "will endanger" the community. The judicial officer must also consider whether one of the codified conditions or any combination of the conditions will "reasonably assure" the defendant's appearance and the safety of the community. The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.

*United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985) (footnotes omitted). The statute does not require that the release conditions guarantee community safety and the defendant's appearance; instead, they require only that the community safety and the defendant's appearance be reasonably assured. *Id*. at 891.

> Only if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions under subsection (c) will *reasonably assure* the defendant's appearance can a defendant be detained before trial.

*Id*. (footnotes omitted) (emphasis in the original).

The relevant factors to be considered include the nature and circumstances of the offense charged; and the history and characteristics of the defendant, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, criminal history, and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g).

Hasan is a naturalized American citizen. He was born in Kuwait in 1979. He moved with his family to the United States in 1990. It appears that he lived in the New York City area until he moved to Jonesboro, Arkansas, in 2010. He was convicted for several crimes in the New York City

area, including attempted forgery and possession of a forged instrument in 2000 or 2001, for which he was sentenced to probation. On January 11, 2002, a warrant was issued for his arrest for alleged probation violations. Hasan then fled the country. According to a report in the parole file, Hasan left the United States and traveled in several foreign countries in Asia, Europe, and South America, before he was apprehended in Colombia and turned over to federal authorities for return to the United States in May 2003.

Hasan was indicted in New York on a multiple-count indictment charging enterprise corruption and other crimes of dishonesty. In March of 2004, he entered a plea of guilty to the charge of enterprise corruption and a charge of bail jumping-second degree. On April 1, 2004, he was sentenced to a period of four to eight years incarceration on the enterprise corruption conviction and one and one-half to three years on the bail jumping conviction. While serving the prison sentence, Hasan was convicted of promoting contraband and sentenced to eighty-nine days. He was released on parole on August 8, 2008, and reached his maximum supervision date on April 8, 2011. While on parole in New York, he was charged with violating the terms of his parole by, among other things, traveling outside the area to which he was limited without permission from his parole officer. A case summary in the parole file says, "On 9-10-09 subject was found to be in possession of 8 credit/debit cards contrary to Board imposed condition not to act in a fiduciary capacity; not to have . . . checking, savings, debit, or credit accounts without parole officer permission. He was also found in possession of an Arkansas driver's license obtained without permission or knowledge while on travel permit."

On December 30, 2009, Hasan applied for a transfer of his supervision to Arkansas. That application was granted in the spring of 2010. Hasan completed his parole on April 11, 2011.

Until his arrest in this case, Hasan continued to travel extensively in foreign countries. Government's Exhibit 2 reflects that between September 19, 2009, and August 31, 2012, Hasan traveled outside the United States on nine occasions.

Hasan is married to Andrea Carolina Gonzalez, a native of Colombia, with whom he has a child. Hasan introduced into evidence as Defendant's Exhibit D-1 a certificate of marriage registration in New York reflecting that he and Gonzalez were married on April 9, 2005. When Hasan jumped bail in 2002-03, he traveled to Colombia, where Gonzalez was living. Gonzalez and Hasan's child presently live in Jordan. Hasan's mother, Aysha Hasan, who is a co-defendant, is also in Jordan.

The New York certificate of marriage registration reflects that Hasan was married under the name of Rami Hasan Saab. The evidence established that Hasan has obtained identification in the name of Rami Hasan Saab and has traveled under that name.

For the past year or year and a half, Hasan has cohabited with Rosa Santana, a co-defendant in this case, who is pregnant with Hasan's child. At the hearing on September 17, 2012, Hasan's lawyer described the relationship between Hasan and Santana as follows: "Ms. Santana is Mr. Hasan's wife for at least with respect to the religion that they practice. They have not got a legal marriage certificate at this point."

Hasan and his brother, Mustafa, own a business in Jonesboro, Arkansas, known as the Downtown Express Mart. The only employment that Hasan mentioned when he was interviewed by the pretrial services officer was his employment at the Downtown Express Mart, and he reported his income as $1,600 per month. That income obviously is insufficient to support the extensive foreign travel in which Hasan has engaged. At the hearing on September 17, 2012, Mustafa testified that

5

Hasan has a children's clothing business and that he owns two clothing stores in Jordan, where he has a business partner. According to Mustafa, Hasan travels abroad to purchase clothes for the stores in Jordan, and he also purchases clothes in the United States. When Hasan's residence in Jonesboro was searched in connection with the investigation that resulted in the instant charges, several boxes of clothes that had been shipped to that residence were found.

At the hearing on October 29, 2012, an FBI agent testified that, during the execution of a search warrant in one of the earlier investigations, New York law enforcement officers found that Hasan had several drivers licenses in names other than his own but with his picture. The parole file contains the following description of the offense conduct regarding Hasan's 2004 convictions:

> The instant offenses involve attempted enterprise corruption and bail jumping. The defendant, acting in concert with apprehended others, defrauded several blue-chip computer companies out of computer equipment and other goods valued at more than two millions dollars. He acted as part of a ring that used false identities and corporations to obtain bank accounts, credit and funds, so the organization could lease and obtain computers as well as other goods and services for personal financial gain. The defendant admitted to committing the offense for monetary reasons. The defendant also admits to bail jumping, since he was scared of getting caught and he fled the country. The defendant was on probation when he committed the instant offenses. . . . His other arrests involve forgery and weapon possession.

Government's Exhibit 1 (10-29-12). The parole file also includes a description of the offense conduct that gave rise to Hasan's forgery conviction. According to the description in the file, Hasan attempted to purchase clothing using a credit card in the name of Ali Mouri. The card was fraudulent and belonged to a person other than Ali Mouri. Hasan signed the name of Ali Mouri on the sales receipt.

The Court has considered the nature and circumstances the offense charged here, as well as Hasan's history and characteristics, including his character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, his history, and record

concerning appearance at court proceedings. As noted, Hasan has a significant history of dishonesty, including the use of false identification. He has some family and community ties in Jonesboro, Arkansas, but those ties are fairly recent and appear to be not nearly as significant as his ties outside the country. While he is the co-owner of the Downtown Express Mart in Jonesboro, Arkansas, he also owns two clothing stores in Jordan. He is involved in some business that causes him to travel outside the United States extensively, and it is obvious that the Downtown Express Mart is not that business. He has family in Jordan, including his mother, his child, and his wife, with whom he has maintained a relationship for many years despite his cohabitation with Santana for the past year and one-half in Arkansas. As noted, in 2002-03 he jumped bail, left the United States, and traveled to Colombia, where Gonzalez then was living. Hasan's connections to New York at that time were at least as extensive as his connections to Arkansas now. His parents and his brother lived in New York at that time, and he had lived there fore more than ten years. Those connections did not prevent him from fleeing from the country to avoid prosecution.

The transcripts of the telephone calls recorded while Hasan was detained in the Craighead County Detention Center indicate that Hasan sent word to his mother, who is a co-defendant and who is currently in Jordan, that she should not come back here. He also made arrangements for transfers of significant amounts of money, in one instance $27,000 and in another instance $8,000. Thus, Hasan apparently has access to significant amounts of money, despite this statement to the pretrial services officer that his income is $1,600 per month.

The Court has considered whether Hasan should be released on personal recognizance or an unsecured appearance bond, and has rejected that alternative. The Court has also considered whether Hasan should be released on conditions such as electronic monitoring, placement with a third-party

custodian, posting bail, or other conditions listed in 18 U.S.C. § 3342(c)(1)(B). Electronic monitoring will not reasonably assure Hasan's appearance, for it is all too easy for a sophisticated defendant with financial resources and the ability to travel across state and national lines to slip the electronic monitoring ankle bracelet and flee. Nor does the Court believe that posting a bond will reasonably assure Hasan's appearance. In light of Hasan's foreign connections, his history of forgery and of using false identifications, and his access to substantial sums of money (the source of which he concealed from the pretrial services officer), the Court has concluded no condition or combination of conditions will reasonably assure Hasan's appearance, so he must be detained.

Hasan's motion to set aside the detention order entered by Magistrate Judge J. Thomas Ray is denied. Document #32. The detention order previously entered by Judge Ray will remain in effect.

IT IS SO ORDERED this 1st day of November, 2012.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE